IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EARTHMOVERS, INC.,

        Plaintiff,

Vs.                                                  No. 07-4134-SAC

SHON MASSEY, SHON MASSEY
TRUCKING, INC., and
TRI-STATE TRUCKING, LLC.,

        Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the motion of the plaintiff Earthmovers, Inc. ("EMI") to enforce a settlement agreement or, alternatively, to compel mediation between the plaintiff and the defendant Tri-State Trucking, LLC and the counterclaimants, Mont's Welding Service, Inc. ("Mont's Welding") and D & K Trucking, Inc. ("D&K").[1] (Dk. 20). Due to circumstances in this case that are not typical in federal litigation, the court believes it would benefit the parties and their counsel in preparing for the hearing to read the court's impressions of their filings and of the status of

---

[1] For its convenience, the court generally will refer to these latter three entities as simply "Tri-State," because the parties are represented by the same attorneys and have submitted the same filings in this matter. By using this joint reference, the court is not expressing any opinion on the propriety of joint representation.

the case.

Because of the limited purpose of this order, the court will not set out the factual background or outline of this case.  Suffice it to say, the court was prepared to hear on December 19, 2007, the counterclaimants' motion for a restraining order (Dk. 8)  and motion for immediate possession (Dk. 9) concerning three trucks owned by the counterclaimants but held by EMI for the completion of agreed modifications to them.  At the start of the hearing, the court asked the counsel and parties to consider conferring before incurring the costs and expenses of additional litigation.  Each side expressed its willingness to do so, and they further agreed that the principals would confer without the involvement of counsel.  The court designated a conference room and recessed the hearing.  Approximately one and one-half hours later, the court resumed the proceeding for counsel to report the following:

> MR. KENNEY [Tri-State's Counsel]:  Your honor, I believe that your suggestion has proved very fruitful.  The parties were able to go back in the jury room and negotiate an agreement to deal with the three trucks that we were here on with a replevin action.  So I think for purposes of our motions here today, we do not need to proceed today.  I would request that we just hold them in abeyance until the parties agree to this in writing, which will take a day or two; but then we will withdraw our motion for replevin after that point.
>
> THE COURT:  Counsel?

> MR. MARSHALL [EMI's Counsel]: I concur with what Mr. Kenney said. Everything he said is accurate.
>
> THE COURT: Well, I want to congratulate the parties. Possibly the entire litigation can be resolved. You have to get together, though. You can't do it long distance. You must get together. . . .

(Dk. 19, pp- 7-8). The parties agreed on dates for submitting an order and withdrawing the motions. The court did not receive the agreed order as promised. Now pending before the court is EMI's motion to enforce the settlement agreement. In opposing the EMI's motion, Tri-State asks the court to enforce its understanding of the settlement agreement.

In its review of the parties' memoranda, affidavits and attachments, the court has considered the following law as relevant to the dispute. In a case pending before it, a trial court may "summarily enforce a settlement agreement" reached by the parties. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993). Because a settlement agreement is a contract, "[i]ssues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). The existence of an agreement is a question of fact, *Reznik v. McKee*, 216 Kan. 659, 671-72, 534 P.2d 243, 254 (1975), and an evidentiary hearing is necessary when the parties raise material factual disputes over whether an

agreement has been reached and what the terms of the agreement are. *See United States v. Hardage*, 982 F.2d at 1496.

Settlement agreements enjoy a favored status in Kansas, as recognized by its Supreme Court:

> It is an elemental rule that the law favors compromise and settlement of disputes, and generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. However, as an exception to the rule, it is well settled that a compromise settlement may be set aside on the ground of mutual mistake of the parties.

*Krantz v. University of Kansas*, 271 Kan. 234, 241-242, 21 P.3d 561, 567 (2001). A court will not inquire into the merits of the underlying suit after a valid settlement absent fraud or bad faith. *Lewis v. Gilbert*, 14 Kan. App. 2d 201, 202, 785 P.2d 1367 (1990). That some party changes his or her mind about the settlement terms does not amount to allegations of fraud or bad faith. *Id*. at 203; *see Woods v. Denver Dept. of Revenue, Treasury Div*., 45 F.3d 377, 378 (10th Cir. 1995) ("Ordinarily, a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind." (citation omitted)).

An oral settlement agreement is enforceable if there has been a meeting of the minds on all essential terms and the parties intend to be

bound by it.  *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 487-88, 15 P.3d 338 (2000).  The parties must have sufficiently defined the essential terms of the contract, for there to be a meeting of the minds. *Id.* at 488.  Put another way, "[t]o constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract."  *Steele v. Harrison*, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976) (citations omitted).

      The parties' shared expectation to have the oral settlement later reduced to writing does not necessarily prevent an enforceable oral settlement agreement.  Generally, "parties are free to bind themselves orally, and the fact that they contemplate later memorializing their agreement in an executed document will not prevent them from being bound by the oral agreement.  However, if the parties intend not to be bound until the agreement is set forth in writing and signed, they will not be bound until then."  *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2nd Cir. 1997) (citations omitted) (applying New York and federal common law).  The same general rule of looking to the parties' intent is

followed in Kansas:

> Where the intent of the parties is clear that they are negotiating with a definite understanding the terms of any contract are not fully agreed upon and a written formal agreement is contemplated, and no valid, enforceable contract is to exist until the execution of such an agreement, a binding contract does not come into existence in the absence of such execution.

*Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, Syl. ¶ 6, 479 P.2d 875 (1971). At the same time, contracting parties may intend to be bound by their oral expressions and consider other outstanding matters as nonessential:

> Certain matters may be expressly left to be agreed upon in the future, they may not be regarded by the parties as essential to their present agreement. Such an expectation will not prevent an agreement already made from being an enforceable contract. This may be true even though they expressly provide in their agreement that new matters, when agreed upon, shall be incorporated into their agreement and all shall be reduced to a formal written document or documents later. The fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves to a definite and enforceable contract.

*Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 735, 512 P.2d 379, 384 (1973) (citations omitted).

Considering this parties' arguments within the above legal framework, the court is left with several distinct impressions. First, the evidentiary hearing is plainly necessary, for there are material factual

6

disputes concerning the existence of a settlement agreement and the terms thereof. Second, the affidavit of Richard T. Bailey, the principal of EMI appearing in the settlement negotiations, and the affidavit of Dusty Morris, the principal of D&K appearing in the settlement negotiations, directly contradict each other in one material respect--whether the agreement resolved all claims between the settling parties or only addressed Tri-State's claim for replevin relief and motion seeking immediate possession of the trucks.[2] Third, if both principals are found to have taken credible positions[3] in this regard, then the parties obviously could not have had a

---

[2] Bailey avers: "We all agreed that this arrangement for the completion of the three trucks would resolve all issues between Tri-State/Mont's/D&K and EMI, and leave only those counts between EMI and Massey/Massey Trucking in the lawsuit." (Dk. 21, Bailey Aff. ¶ 23). Morris avers: "Montee Morris, Terry Bailey and I (hereinafter collectively referred to as the "Parties") did not attempt to resolve any of the claims raised in this litigation, our sole focus was reaching an agreement to complete the work on the Trucks at EMI so that the Parties would not need to proceed with the hearing to take immediate possession of the trucks." (Dk. 24, Morris Aff. ¶ 9).

[3] The court is mindful that this issue is intended to be the subject of the scheduled evidentiary hearing. The court also understands EMI's argument that its consideration for settlement of all claims was agreeing to apply all deposits in its possession towards the purchase prices on the three completed trucks rather than just the allocated fifty percent deposit previously made by D&K, Mont's Welding and Tri-State for each truck. Tri-State's brief charges EMI with "bad faith" in asserting this position and in refusing to sign the settlement agreement without this term. Tri-State further explains that it was willing to offer the additional $46,468.06 for the

meeting of the minds on an essential term of the agreement. Fourth, should the court find that there was no meeting of the minds on an essential term, EMI requests an order of mediation with a provision that the parties confer directly with each other. The court certainly will ask the parties to confer again and structure their discussions in a manner that would be most beneficial and conducive to settlement. Finally, in the event Tri-State went forward on the replevin proceeding, Kansas law requires a movant to file "a bond in not less than double the amount of the value of the property as stated in the affidavit or verified petition" K.S.A. 60-1005(b), and the court would credit toward Tri-State's bond requirement no more than the fifty percent deposit specifically made and allocated for each of the three trucks.

        IT IS THEREFORE ORDERED that on May 8, 2008, at 2:00 p.m., the court will hear the parties' positions, arguments and evidence on EMI's motion to enforce settlement agreement. (Dk. 20).

---

three completed trucks because by not releasing the accounting claim this sum could be recovered if Tri-State, D&K and Mont's Welding were later successful on their accounting claim. This last argument raises a possible red flag for this court with regard to the propriety of the same counsel representing all entities claiming an interest in the same funds deposited with and held by EMI. The court recognizes that these entities may share an alignment of interests about which the court is unaware and/or that sufficient waivers have been secured.

Dated this 30th day of April, 2008, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge